**E-FILED**
Tuesday, 03 March, 2015  01:00:19 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Crim. No. 13-10108** |
| | ) | |
| **SHANE L. ELDER,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT'S COMMENTARY ON SENTENCING FACTORS

Now comes the Defendant, Shane L. Elder, by his attorney, and for the reasons that follow, respectfully requests that this Court sentence him to a term of sixty months in prison. A sentence of sixty months is sufficient, but not greater than necessary, when considering the nature and circumstances of the offense and the history and characteristics of Mr. Elder.

The advisory guideline range noted in the presentence report is 168 -210 months although the United State Probation Department suggests that a range of 135-168 may be more appropriate.¶80, ¶111 Mr. Elder has 9 criminal history points. Consequently, his criminal history category is IV. He has no prior convictions related to pornography or any child sex offense. ¶50 He has no juvenile adjudications at all. ¶37 Mr. Elder participated in a non-custodial interview, without the presence of an attorney, and cooperated with the police.

¶12. Additionally, this cases involves a relatively low number of images (44 images and 1 video). ¶28 Despite these facts, the advisory guideline range nears the statutory maximum of 20 years. Mr. Elder contends that the advisory guideline sentencing range is beyond what is sufficient and greater than what is necessary to serve justice.

Mr. Elder suffered from sexual abuse, a dysfunctional upbringing, and an unstable home environment. His mother was a drug user who is reported to have been using cocaine during pregnancy and at the time of his birth. She eventually died from AIDS. Mr. Elder's father moved frequently, may have spent time in jail while raising his son, and admittedly fled from the DEA while his son was growing up. His parents were separated and at least one sibling was sent away to live with relatives.¶55 While the bureau of prisons doctor described Mr. Elder as malingering, he has been receiving multiple psychotropic medications while awaiting sentencing in this case including Remeron and Busbar. These psychotropic drugs are used to treat depression and anxiety disorders. To make matters worse, Mr. Elder was victimized sexually both as a youth and while in prison. ¶56, ¶48

Mr. Elder's neglect during childhood and lack of parental guidance warrant a substantial variance from the advisory guideline range. The United

States Supreme Court has recognized that no citation of authority is required to assert that children who are abused in their youth generally face extraordinary problems developing into responsible, productive citizens. *See, Santosky v. Kramer*, 455 U.S. 745, 789 (1982) (Rehnquist, J., joined by Burger, C.J., White, and O'Connor, JJ., dissenting).

The applicable guideline recommends that this first time sex offender serve a term of 14 to 17.5 years in prison despite having made no physical contact with any minor nor producing any images himself. This unreasonable suggestion is the result of applying of U.S.S.G. § 2G2.2, "an eccentric Guideline of highly unusual provenance which, unless carefully applied, can easily generate unreasonable results."   *United States v. Dorvee*, 604 F.3d 84, 98 (2d Cir. 2010). Recognizing the flaws in this guideline, judges across the country have declined to impose sentences within the range it recommends. *United States v. Shipley*, 560 F. Supp. 2d 739, 744-46 (S.D. Iowa 2008) (explaining that the guidelines' "advice in this [child-exploitation] case is less reliable than in other cases where the guidelines are based on study and empirical data," and, thus, 90 months' imprisonment was more appropriate than guidelines range of 210 to 240 months); *United States v. Hanson*, 561 F. Supp. 2d 1004, 1008-12 (E.D. Wis. 2008) (sentencing defendant whose effective guidelines range was 210- 240 months'

3

imprisonment to 72 months); *United States v. Grober*, 595 F. Supp. 2d 382, 390-412 (D.N.J. Dec.22, 2008) (sentencing defendant to 60 months' imprisonment, though guidelines range was 235 to 293 months); *United States v. Baird*, 580 F. Supp. 2d 889, 894-96 (D. Neb. 2008) (imposing sentence of 24 months, although guidelines range was 46 to 57 months).

Numerous decisions by district courts reveal several systemic problems with the Guidelines' treatment of child pornography offenders. The history behind the sentencing provisions for child pornography establishes that they were promulgated and enacted in response to various Congressional directives calling for significantly higher custody ranges, were not developed pursuant to the Sentencing Commission's normal processes, and were not based on empirical data and expertise. *Grober*, 624 F.3d at 611; *Dorvee*, 616 F.3d at 184–85.

Second, the Guidelines provide a large number of sentence enhancements, which apply in nearly every case and cause routine offenses to generate unnecessarily high sentencing ranges. As former Chief United States District Judge for the Central District of Illinois, Michael P. McCuskey, aptly noted in sentencing a defendant for possession of child pornography over four years ago:

> I have found, in each and every one of these cases, double-counting. They're all computer cases. We don't go to the dirty bookstore and get DVDs or eight-tracks. This is all the computer industry. And, eventually, the sentencing guidelines will be amended, I believe,

4

and catch up to the fact that it's double-counting. But right now the law says it's okay.

*United States v. John C. Keith*, Case No. 09 CR 20007, October 29, 2010.

In the year following Judge McCuskey's statements, the government prosecuted 1,645 defendants convicted of possessing, receiving, or distributing child pornography nationwide, and 97.4% used a computer. U.S. Sent'g. Comm'n, *Use of Guidelines and Specific Offense Characteristics* (2011); U.S. Sent'g Comm'n, 2011 *Sourcebook of Federal Sentencing Statistics*.

In 2015, at least the United States Probation Department acknowledges in this case that a two level increase for use of a computer may warrant a variance. The United States Probation Department states in ¶111:

> The probation officer has identified one factor under 18 U.S.C. § 3553(a) that **may warrant a variance** from the advisory guideline range**. In similar cases to this, the Courts have often varied** from the suggested guideline by reducing the offense level by two based upon the enhancement for use of a computer. As most if not all possession/distribution of child pornography involves the use of a computer, the Courts have found the enhancement to **be redundant and excessive**. If the Court would make such a variance, the guideline range in this case would be **135-168 months**. [emphasis added]

The Court may also consider the significant collateral consequences of a sex offense conviction. Regardless of the length of Mr. Elder's sentence, he will re-enter society forever branded with the label "sex offender," required by both state and federal law to register. Life as a registered sex offender is more

compromised than life after a conviction for any other type of offense.

For example, housing can prove difficult, if not impossible, for registered sex offenders, who are often forced upon the mercy of their families or social services. Employment is hard to find, especially for those sex offenders whose occupations require frequent contact with the public. The supervision limitations on computer use and internet access further limit employment opportunities. The social stigma of registration cannot be overstated. The fact is that Mr. Elder, upon completing his prison sentence, will only have begun to suffer his punishment. He will face a lifetime of distinct collateral consequences.

Nowhere are the collateral consequences of conviction for a crime of this nature more clearly displayed in the PSR than the myriad of suggested conditions of supervised release. ¶90-103 If adopted by the Court, these conditions create a substantial burden upon the liberty of the defendant and grant broad discretion to the United States Probation Office in implementing often vague and overlapping provisions. The defense made written objections to some time ago. The addendum references page and paragraph numbers that differ from the revised presentence report. For purposes of clarity the defense objects to the conditions contained in the revised presentence report paragraphs as follows:

¶90 States: The defendant shall not leave the judicial district without the permission of the court or probation officer. In accordance with *U.S. v. Thompson*, this condition is an administrative requirement and is a necessary incident of supervision.

If this condition is deemed appropriate language should be added specifying that leave to travel outside the jurisdiction should be granted liberally so that the condition "involves no greater a deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a) (2)(B), (a)(2)(C) and (a)(2)(D) and required by 18 U.S.C. §3583(d)(2)" It is unnecessary to impose this condition at this time. Mr. Elder is from Maine and he has spent most of his life there. He desires to return to Maine in the future. At this point the length of his sentence is unknown. It is also unknown whether the Bureau of Prisons would release him to the state of Maine after service of sentence. This condition could be imposed nearer to the time of release.

¶91 States: The defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer. In accordance with *U.S. v. Thompson*, this condition is an administrative requirement and is a necessary incident of supervision.

This condition is vague and overbroad. It leads to the possibility of inconsistent law enforcement application. A monthly reporting requirement would provide a greater degree of specificity.

¶92 States: The defendant shall follow the instructions of the probation officer. Any answers the defendant gives in response to the probation officer's inquiries must be truthful. In accordance with *U.S. v. Thompson*, this condition is an administrative requirement and is a necessary incident of supervision.

The defendant objects to the imposition of this condition without clarifying that the defendant is not required to incriminate himself and is not required to relinquish his 5th amendment rights. This condition is also vague. Simply ordering the supervisee to follow all instructions of the probation officer is broad and unclear.

¶93 States: The defendant shall permit a probation officer to visit him or her at home or elsewhere between the hours of 6 am and 11 pm, unless investigating a violation or in case of emergency. The defendant shall permit confiscation of any contraband observed in plain view of the probation officer. Pursuant to 18 U.S.C. § 3603(2) and (4), the U.S. Probation Officer is statutorily required to keep informed of the conduct and condition of a person under supervision. The U.S. Probation Officer must conduct visits to the person on supervision in his home or elsewhere to meet these statutory requirements. Pursuant to 18 U.S.C. § 3553(a)(1) and (2), in order to protect the public from further crimes of a person under supervision, the U.S. Probation Officer must be allowed to confiscate any contraband in plain view.

The defendant objects to imposition of this condition and states that if a probation officer has probable cause to believe that a crime is being committed by the supervisee a warrant should first be obtained. This condition is also vague

in that the terms "investigating a violation" and "emergency" are not defined in any way. Additionally, a probation officer might investigate what he or she believes to be a *potential* violation of the conditions of supervised release. However, until a petition has been filed, a hearing conducted, and a ruling against the defendant made, there is merely an alleged violation. Just because the U.S. Probation Department has obligations to fulfill does not mean that those obligations negate the rights of the individual supervisee. Similarly, police officers also have an obligation to protect the public. However, there are constitutional limits to this authority.

> ¶94 States: The defendant shall notify the probation officer at least ten days prior, or as soon as knowledge is gained, to any change of residence or employment. Pursuant to 18 U.S.C. § 3603(2) and (4), the U.S. Probation Officer is statutorily required to keep informed of the conduct and condition of a person under supervision. The U.S. Probation Officer must conduct visits with the person on supervision in his home and must be aware of address changes and his current whereabouts to meet these statutory obligations.

This condition is vague and overbroad because it is poorly drafted. The better course would be to specify what exactly is required of the supervisee. For example, "Within ten days of any relocation of residence or new employment the supervisee shall notify the United States Probation Department."

> ¶95 States: The defendant shall notify the probation officer within 72 hours of being arrested or questioned by a law enforcement officer. Pursuant to

9

18 U.S.C. § 3603 (2) and (4), the U.S. Probation Officer is statutorily required to keep informed of the conduct and condition of a person under supervision. Pursuant to 18 U.S.C. § 3553(a)(1) and (2), in order to protect the public from further crimes of a person under supervision, the U.S. Probation Officer must be aware of any contact the supervisee has with law enforcement to determine if he is involved in criminal activity.

The defendant objects to the imposition of this condition and states that he has a 5th amendment right not to incriminate himself. Further, this condition would create a chilling effect upon the reporting of crimes by the defendant whether he is a victim or a witness. This requirement is unnecessary because the probation department is not dependent upon statements made by the supervisee. The United States Probation Office has access to a variety of law enforcement tools that alert to any contact the supervisee may have with law enforcement in the future. For example, the Probation Office has access to the National Crime Information Center (NCIC), an automated system. Additionally, criminal convictions are a matter of public record.

¶96 States: The defendant shall notify any individual(s) or entity of any risk associated with this history, and allow the U.S. Probation Officer to verify that notification has been made. Should the defendant fail to make notification within 30 days, the U.S. Probation Officer shall make notification. The defendant's instant offense involved the victimization of children. He has held employment as a mechanic, where families and children frequent. A condition requiring him to notify any third party risk is critical in his successful reintegration into the community. This condition will also takes into count the safety of the community.

10

This condition is premature, vague and overbroad. The length of defendant's sentence is unknown and his progress in sex offender treatment at the Bureau of Prisons is also unknown. This condition could be imposed in the future if necessary. Furthermore, although the receipt and possession of child pornography involves the victimization of children, in this case there is no indication that defendant ever made inappropriate contact with any child or created images of child pornography himself. His crime involves trading images electronically. If the Probation Office already has a duty to notify employers and others of the supervisee's criminal history, it is unnecessary for the supervisee to do so and results in a greater deprivation of liberty than necessary in violation of 18 U.S.C. §3583(d)(2).

> ¶97 States: You shall participate in a sex offender treatment program as deemed necessary by the U.S. Probation Office. You shall abide by the rules of the treatment provider. You shall submit to physiological testing, including polygraph testing. You shall pay for such services, if financially able, as directed by the U.S. Probation Office. The defendant distributed and possessed pornography of children engaged in sexual activity. The defendant reported being sexually abused in the past. During his assessment with the Bureau of Prisons, a diagnosis of Pedophilic Disorder was also considered, given the nature of the current charges. However, Mr. Elder asserted he never had any problems with respect to deviant sexual desires. Because of his denial and minimization of his alleged offense behavior, it was not possible to fully assess whether he may have a paraphilic disorder. It should be noted that he made these denials prior to his plea of guilty. As the defendant has pled guilty to an offense involving

the sexual exploitation of children, has reportedly been a victim of sexual abuse, it is appropriate that the defendant participate in a sex offender treatment program as deemed necessary by the U.S. Probation Office.

Defendant objects to the imposition of this condition and states that it is premature, overbroad, and vague. No information has been provided to the defense concerning what the proposed physiological testing would entail. Concern about the intrusive nature of similar programs has caused other courts to strike down similar conditions. See, *United States v. Antelope*, 395 F.3d 1128 It is unknown when defendant will be released from prison. Also, his progress in sex offender treatment is unknown. In the future this Court can order an assessment and conduct a hearing to determine whether further treatment is necessary and, if so, impose a condition requiring such treatment. To impose the condition as written is premature and delegates the requirement to determine whether or not this condition is reasonable to the United States Probation Officer at a time when it is uncertain whether or not the condition will be necessary. Defendant's assessment by the Bureau of Prisons was for purposes of determining competency and sanity. It was not a risk assessment or sex offender evaluation. Defendant suggests that he be evaluated upon release from the Bureau of Prisons and that a hearing be held to determine what if any further treatment is needed at that time.

¶98 States: You shall have no contact with any person under the age of 18 except: (1) in the presence of an adult who is aware of the nature of your background and current offense, and who has been approved by the U.S. Probation Office; (2) in the course of normal commercial business; or (3) in other cases of unintentional and incidental contact. The defendant has shown sexual interest in minors by seeking out, possessing and distributing child pornography. The defendant is also a father to two minor children. In order to protect the community, the defendant should not be allowed to have contact with any minors.

This condition is overbroad. There is no indication that defendant ever made inappropriate sexual contact with any minor let alone his own children. This offense is limited to trading images created by others electronically.

¶99 States: You shall not knowingly receive, transmit, have under your control, or view, any material that depicts sexually explicit conduct as defined in 18 U.S.C. § 2256(2)(A) and (B). The defendant entered a plea of guilty to Distribution of Child Pornography. Possession of child pornography is illegal. It has been recommended that the defendant participate in treatment. In order to ensure his success in treatment, the defendant should not possess or view any pornography, including adult pornography. The defendant should refrain from viewing, and possessing pornography.

This condition is overbroad. There has been no evidence presented to support the conclusory statement that, "In order to ensure his success in treatment, the defendant should not possess or view any pornography, including adult pornography" made in support of this condition. The condition, if needed, could be imposed after a hearing nearer to the time of defendant's release where

13

his current condition could be assessed and further treatment ordered if

necessary. A treatment provider could provide an expert opinion on whether or

not viewing legal pornography will be detrimental for this particular supervisee.

The statement, "Possession of child pornography is illegal" does nothing to

address the question of whether or not a complete prohibition upon the viewing

of *legal pornography* is necessary to impose at this time. This condition is

unnecessary, if not redundant considering there is a mandatory condition

prohibiting him from committing new offenses including the possession of child

pornography.

¶100 States: You shall participate with the U.S. Probation Office's
Computer and Internet Monitoring Program (CIMP) during your term of
supervision. The monitoring program will start as soon as possible after
your supervision term begins. You shall sign the rules of the Computer
Internet and Monitoring Program and comply with the conditions of this
program. During this time, you shall install filtering software on any
computer you possess or use which will monitor access to websites that
depict sexually explicit conduct as defined in 18 U.S.C. § 2256(2)(A) and
(B) . You shall allow the U.S. Probation Office unannounced access to any
computer you possess or use to verify that the filtering software is
functional. You shall pay for the cost of the filtering software, if financially
able, as directed by the U.S. Probation Office. The defendant used a
computer to commit the instant offense. The defendant used external hard
drives to store child pornography along with other computer peripherals.
Monitoring the defendant's computer activity will be a key factor in the
U.S. Probation's Office to ensure that the defendant is complying with all
of his conditions of supervised release.

This condition is overbroad and encompasses apparently unlimited

14

searches of defendant's residence at any time, and therefore the residence of any

person with whom he resides, for the duration of supervised release. It is also

premature to impose this condition when the duration of the defendant's

sentence could well exceed a decade. This issue would be best addressed nearer

to the time of release and after defendant has had the opportunity to participate

in sex offender treatment through the bureau of prisons. An evaluation could be

ordered nearer to the time of release to gain a better understanding of whether

this condition is required and what it should encompass. It is also unclear how

the monitoring software works and if the filters are overbroad or too narrow.

¶101 States: If there is reasonable suspicion to believe that you are in violation of a condition of supervised release, you shall submit to the search of your person, automobile, and property under your control by the U.S. Probation Office. You shall also allow the U.S. Probation office to conduct periodic unannounced examinations of your computer equipment, Internet capable devices, similar electronic devices, related computer peripherals, which may include retrieval and copying of all data from your device to ensure compliance with this condition, and/or removal of such equipment for the purpose of conducting a more thorough inspection. The defendant used his computer to commit the instant offense. He also hid his criminal activity from his spouse and others. The defendant's spouse found an external hard drive hidden along with other sexual aids in a bag hidden out of plain site. Accordingly, if there is reasonable suspicion to believe that the defendant is in violation of a condition of supervised release, he should submit to any reasonable search request.

This condition is vague and overbroad. It is unclear whether this condition

would allow for unlimited searches of defendant's residence, person, vehicle etc. for the duration of the supervised release period or whether he would be required to bring the listed items with him to the probation department. As worded this condition would imposed the burden of home searches unlimited in time or number or duration. Any search should be based upon probable cause and upon a valid warrant per the 4th Amendment.

> ¶102 States: You shall not knowingly use the Internet or visit any website, including chat rooms or bulletin boards, to view material depicting sexually explicit conduct as defined in 18 U.S.C. § 2256(2)(A) and (B). The defendant used the internet and the chat program Yahoo Messenger to obtain, possess, and distribute child pornography. As the above Internet programs were used as a vehicle to carry out the defendant's criminal activity he should be prohibited from participating in such activity.

This condition is redundant and overbroad. There is a mandatory condition already prohibiting defendant from committing new offenses such as possession of child pornography as well as a condition proposing internet monitoring.

> ¶103: You shall not purchase, possess, use, distribute, or administer any controlled substance or psychoactive substances that impair physical or mental functioning except as prescribed by a physician. You shall, at the direction of the U.S. Probation Office, participate in a program for substance abuse treatment including not more than six tests per month to determine whether you have used controlled substances. You shall abide by the rules of the treatment provider. You shall pay for these services, if financially able, as directed by the U.S. Probation Office. The defendant

has a long history of substance abuse. The defendant has abuse marijuana, heroin and cocaine. He also abused benzodiazepines (Xanax), and opiates (Vicodin). He said he used marijuana on a daily basis at times. He said he used Vicodin on a daily basis over the last few years. The BOP reported that the defendant had shown previous drug seeking behavior while he was incarcerated. The defendant was diagnosed with Benzodiazepines and Opioid Use Disorder. The use and possession of illegal substances would further be a violation of state and federal law. Accordingly, the defendant should be prohibited from such activities.

This condition is unnecessary because it is redundant. There is a mandatory condition prohibiting the supervisee from committing a new crime. It is already a crime to purchase, possess, use, distribute, or administer any controlled substance or psychoactive substances that impair physical or mental functioning except as prescribed by a physician.

In determining an appropriate sentence, this Court must consider the sentences available by statute. *See* 18 U.S.C. § 3553(a)(3). Congress set the statutory range of imprisonment for Mr. Elder at five to twenty years and zero to ten years respectively. *See* 18 U.S.C. § 2252A(a)(2)(A) and (b)(1). Mr. Elder's advisory guideline range before reduction for acceptance of responsibility is 235-293 months. The low end of the advisory range is only 5 months below he statutory maximum despite Mr. Elder never before having committed a crime of this nature.

As many courts have observed, the child pornography guideline, by

17

enhancing sentences based upon factors that are inherent in the crime and thus appear in nearly every case, concentrates offenders at or near the statutory maximum and thus fails to meaningfully distinguish more serious offenders from less serious offenders. Sentences at or near the statutory maximum should be reserved for the "worst possible variation of the crime" committed by the most dangerous offender. *See United States v. Aleo*, 681 F.3d 290, 302 (6th Cir. 2012); *cf. United States v. Poynter*, 495 F.3d 349, 354 (6th Cir. 2007) ("not all repeat sex offenders deserve" to be sentenced at the statutory maximum; "otherwise, Congress would not have set a statutory range of 0-60 years").

Mr. Elder has never before committed a crime of this nature. Sentences at the top of the guideline range should be reserved for the worst of the worst. Mr. Elder is not the worst of the worst. He is not a repeat sex offender and the image count is low when compared with other cases. Mr. Elder pled guilty and accepted responsibility for his criminal conduct from the moment he consented to a non-custodial uncounseled interview and confessed. He asks the Court to impose a sentence that is "sufficient but not greater than necessary" and in so doing to consider his dysfunctional upbringing, as well as the internal flaws of the applicable guideline, and the lasting stigma and burden that accompanies conditions of supervised release, sex offender treatment, and sex offender

18

registration.

Accordingly, Mr. Elder recommends a sentence of sixty months.

Shane L. Elder, Defendant

/s/ Karl Bryning
Attorney for Defendant
Assistant Federal Public Defender
401 Main Street, Suite 1500
Peoria, Illinois 61602
Phone: 309/671-7891
FAX:   309/671-7898
Email: karl_bryning@fd.org

CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the filing: Mr. John E. Childress, Assistant United States Attorney, 211 Fulton Street, Suite 400, Peoria, IL 61602.

/s/ Karl Bryning
Attorney for Defendant
Assistant Federal Public Defender
401 Main Street, Suite 1500
Peoria, Illinois 61602
Phone: 309/671-7891
FAX:   309/671-7898
Email: karl_bryning@fd.org